UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| ABLE MANUFACTURING & WHOLESALE GARAGE DOOR CO., | § § § § | CASE NO. 03-37568-H2-11 (CHAPTER 11) |
| Debtor. | § | |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OBJECTION TO
CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The Official Unsecured Creditors Committee (the "Committee") hereby objects to the Debtor's Plan of Reorganization. The grounds for this objections are as follows: Although, the Committee understands that a quick sale of the assets is necessary, the Plan fails to comply with several important provisions of 11 U.S.C. §1129. Additionally, the day after the Court conditionally approved the disclosure statement the Debtor revealed that the case was manipulated by an undisclosed agreement between the directors, which the COO had not seen, and also that the Debtor had not disclosed insider transfers.

**Background**

1.  The Debtor filed a motion to sell all the Debtor's assets on the petition date, May 28, 2003 and proposed a fast-track conditional disclosure statement and plan. The Disclosure statement was conditionally approved on June 16, 2003. On June 17, 2003, the Debtor commenced its examination at the meeting of creditors, but stormed out after minutes of questioning by the creditors committee counsel.

**The Plan is Inconsistent with the Disclosure Statement, the Cash Collateral/DIP Order and the Asset Purchase Agreement and does not Adequately Provide for the Payment of Administrative and Priority Claims as required by Section 1129(a)(9).**

*Inconsistency Relative to Administrative and Priority Claims*

2.  The Plan provides that the "Sale Proceeds" will be paid directly to the Bank until its claim is paid in full. However, the Cash Collateral/DIP Order provides a $100,000 carve out for professionals and the Disclosure Statement provides a $35,000 payment to fund Trust expenses. Therefore, the Plan should provide that $135,000 of the Sale Proceeds are transferred to the Trust at closing to fund the payment of administrative professional fees and Trust operating expenses.

3.  In addition, the Plan provides that Priority Tax Claims will be paid in full either at closing of the sale or from the Trust. The Committee submits that Priority Tax Claims should not be paid in full at closing because this will effectively prevent the Trust from objecting to such claims. Rather, the Committee submits that full amount due with respect to all Priority Tax Claims should be transferred to the Trust at closing. After the funds referred to in paragraphs 2 and 3 are transferred to the Trust, the balance of the proceeds can be paid to satisfy the Class 2 claim of the bank. If there are any excess sale proceeds after payment of the Class 2 claim, such funds should likewise be placed in the Trust for the benefit of the unsecured creditors.

4.  If the foregoing transfers are not made prior to payment of the sale proceeds to the Bank, it is highly likely that there will be insufficient funds to pay administrative and priority claims as required by Section 1129(a)(9). Therefore, absent this change the plain is likewise not feasible as required by Section 1129(a) (11).

*Inconsistency Relative to the Asset Purchase Agreement*

5. The Asset Purchase Agreement states that the purchaser is not purchasing accounts receivable. However, the purchaser is going to collect those accounts receivable for a fee which could turn out to be as much as $165,000 (approximately 20%). This is not disclosed in the Disclosure Statement. Rather, it is in an Exhibit to the Asset Purchase Agreement. There is no reason to pay the purchaser such a high fee for collecting accounts receivable. The Committee submits that to make the transactions consistent with what is being represented, that the accounts receivable should be transferred to the Trust for collection. The Trust can collect these for a much smaller fee.

### The Plan Technically Fails to Comply With §1129

6. **The Plan Trustee is Not Disclosed.** In order to be confirmed, a plan must comply with the provisions of 11 U.S.C. §1129 and Title XI as a whole. Section 1129 (a)(5) requires the proponent to disclose the identity of the individual who will be the debtor's successor. The Plan does not disclose the identity of the Trustee, whether he is an insider, what his compensation will cost, and whether he is exculpated from negligence. In fact, a copy of the trust instrument is not attached to the Plan. Consequently, there is no way for the creditors to determine if the form of this document is acceptable.

7. Further, if the Plan is confirmed, the Creditors Committee should continue and should have input into the liquidating trust's decisions, as the liquidating trust is intended to recover for their benefit.

8. **The Debtor Does not Disclose Treatment of Executory Contracts**. The Debtor and Garaga have not yet decided whether the Plan will be followed. Specifically, Garaga proposes

to treat finance leases as security interests, obtaining the property free and clear. However, the Debtor intends to have Garaga assume the leases - causing Garaga to continue paying on the leases. This critical issue remains unresolved. Garaga has proposed that it might make an adjustment (outside the sale contract) for the "secured" asset. In other words, there is no meeting of the minds.

9. Until and unless the Debtor and Garaga have a meeting of the minds on the sale contract underpinning the plan, the plan is not confirmable.

### The Plan Proponent Failed to Comply With Title XI.

10. **The Debtor Stormed Out of its Meeting of Creditors**. The Debtor's representative walked out of the meeting of creditors after only 20 minutes of questioning by the Creditor's committee. Although the Debtor offered to appear by Rule 2004 examination, such an offer was meaningless in view of the speed at which this case is proceeding. Therefore, by leaving, the Debtor violated 11 U.S.C. §343, which states "the Debtor shall appear and submit to examination under oath . . ." The Debtor's examination occurred the morning after the Court conditionally approved the disclosure statement. Storming out of the meeting of creditors is evidence of bad faith.

11. **The Debtor Concealed a Secret Inter-Shareholder Agreement that Caused the Bankruptcy.** In the 20 minutes of examination at the meeting of creditors, the Debtor revealed, for the first time, that an impetus for the case was a *sealed* inter-shareholder agreement. The Debtor's Chief Operating Officer has not seen the settlement agreement, though he asked. Oblique references to a court-ordered sale have been made in pleadings. However, the agreement under seal is not disclosed in the schedules or disclosure statement, the Chief Operating Officer does not know its terms. The agreement must be disclosed to creditors before the Plan can be confirmed.

12. Specifically, as part of the "adequate information" required under 11 U.S.C. §1125, the Debtor must disclose the substance of pre-bankruptcy agreements to take actions regarding a case under Title XI. Failure to disclose this agreement in the conditionally-approved disclosure statement means that creditors have not been made aware of a critical fact. The Debtor's conscious refusal to disclose this pre-bankruptcy secret agreement evidences bad faith.

13. **The Debtor Failed to Disclose Insider Transfers**. The Debtor also admitted, during the 20 minutes of examination, that it had not disclosed legal payments for the benefit of insiders, or payments made to a 30% shareholder in the year preceding the bankruptcy as a payment on a loan in excess of $300,000. The Debtor's COO was aware of the transfers, but did not disclose them on the statement of financial affairs. Under 11 U.S.C. §521(1), the Debtor "shall" file its statement of financial affairs, disclosing the insider transfers.

14. **While the Schedules Show a Solvent Debtor, The Debtor is Insolvent** It should be no surprise that the Debtor is insolvent. At the meeting of creditors, the Debtor admitted that it was insolvent, and has been for recent memory. The definition used for insolvency was the "balance sheet" test of liabilities exceeding assets at fair value. While the insolvency of the Debtor is not news, the testimony directly contradicts the Debtor's schedules of assets and liabilities - which show solvency. This contradiction evidences bad faith at worst or, at a best, a failure to comply with 11 U.S.C. §521(1).

## Conclusion

15. The Plan fails to comply with key provisions of Section 1129. Therefore, it cannot be confirmed. Moreover, by concealing the impetus for bankruptcy and storming out of the meeting of creditors, the Debtor has failed to comply with the core of the Bankruptcy Code - transparency.

The Court conditionally approved the disclosure statement based on a veneer of compliance. Fifteen hours later, the veneer cracked. The Court should deny confirmation of the Plan and revoke its conditional approval of the disclosure statement, in addition to other remedies available under the code.

WHEREFORE, PREMISES CONSIDERED, the Official Committee of Unsecured Creditors requests that the Court consider these objections and deny confirmation of the Debtor's Plan of Reorganization, and grant such other relief as is equitable.

Dated:      June 23, 2003

        Respectfully Submitted,

        WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

        By:_____*Hugh M. Ray, III*_____
            EDWARD L. ROTHBERG
            State Bar No. 17313990
            HUGH M. RAY, III
            State Bar No. 24004246
            1400 Summit Tower
            Eleven Greenway Plaza
            Houston, Texas  77046
            Telephone: (713) 961-9045
            Facsimile: (713) 961-5341

        PROPOSED   COUNSEL   FOR   OFFICIAL UNSECURED CREDITORS' COMMITTEE

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the above Objection was forwarded to the Debtor's counsel, counsel for the secured creditor, the prospective purchaser, and the U.S. Trustee, by e-mail or fax, and by first class mail to all parties on the attached Master Service List on the 23rd day of June 2003.

                                             ____*Hugh M. Ray, III*____
                                               HUGH M. RAY, III

MASTER SERVICE LIST

In Re: Able Manufacturing & Wholesale Garage Door Co.
Case Number: 03-37568

ABLE MANUFACTURING &
WHOLESALE GARAGE DOOR CO.
5707 MITCHELLDALE
HOUSTON, TX 77092

PATRICK E GRIFFIN
FLOYD ISGUR ET AL
700 LOUISIANA, STE 4600
HOUSTON, TX 77002-2732

HECTOR DURAN
OFFICE OF THE US TRUSTEE
515 RUSK AVE STE 3516
HOUSTON, TX 77002

RONALD HORNBERGER
PLUNKETT & GIBSON, INC.
PO BOX 795061
SAN ANTONIO, TEXAS 78216

MARK OVESON
BROWNSTEIN HYATT & FARBER
410 SEVENTEENTH ST. 27TH FLOOR
DENVER, CO 80202-4437

GAIL MCDONALD / JOE EPSTEIN
WINSTEAD SECHREST & MINICK
910 TRAVIS, SUITE 2400
HOUSTON, TX 77002

**Creditor's Committee:**

KENWOOD PAINTED METALS, INC.
ATTN: GREG UNDERWOOD/
ROGER SIEJA
930 W. 175TH STREET

HOMEWOOD, IL 60430
HELTON INDUSTRIES, LTD
ATTN: MIKE RAUCH
30840 PEARDONVILLE ROAD

ABBOTSFORD, BC, V2T6K2
UNISOURCE WORLDWIDE, INC.
ATTN: CRAIG A. PEPPER
2828 TRADE CENTER DRIVE,

SUITE 140
CARROLLTON, TX 75007
EXCEL STAMPING & MFG, INC.
ATTN: FREDDIE YAGGI

1710 WEST 27TH STREET
HOUSTON, TX 77008
PREMIER INDUSTRIES, INC.
D/B/A INSULFOAM

ATTN: ROBERT L. RISE/JULIE
COOKE
1019 PACIFIC AVE., SUITE 1501
TACOMA, WA 98402

**Top Twenty Creditors:**

NAPOLEON SPRING
PO BOX 95266
CHICAGO IL 60694-5266

CHAMBERLAIN
PO BOX 99152
CHICAGO IL 60693

OMNI METALS
PO BOX 61487
HOUSTON TX 77208

THOMPSON KNIGHT BROWN
PARKER
1200 SMITH ST. SUITE 3600
HOUSTON TX 77002

HOUSTON ISD TAX OFFICE
PO BOX 4668
HOUSTON TX 77210-4668

IOWA SPRING MFG.
2112 GREEN
PO BOX 130
ADEL IA 50003

BALDWIN STEEL CO.
DEPT. CH14096
PALATINE IL 60055-4096

INSULFOAM (MEAD)
DEPT. #7741
PO BOX 34936
SEATTLE WA 98124-1936

FASCO FASTENERS & SUPPLY CO.
13230 HEMSTEAD, #322
HOUSTON TX 77040

SCHNEIDER NATIONAL, INC.
PO BOX 2545
GREENBAY, WISCONSIN 54306-2545

BRIGGS & VESELKA CO.
6565 WEST LOOP SOUTH
SUITE #800
BELLAIRE TX 77401

USA PLASTICS
107 ROLAND HILLS DR. NE
DALTON GA 30721

| | | |
|---|---|---|
| ROYAL MOULDINGS LIMITED<br>PO BOX 610<br>MARION VA 24354-0610 | JANITOR'S WAREHOUSE<br>PO BOX 431809<br>HOUSTON TX 77243-1809 | FALCON FOAM<br>8240 BYRON CENTER RD., SW<br>BYRON CENTER MI 49315 |
| HUMANA HEALTH PLAN OF TEXAS<br>12302 COLLECTIONS CENTER DRIVE<br>CHICAGO IL 60693 | | |

**PARTIES REQUESTING SERVICE:**

| | | |
|---|---|---|
| | KEAVIN D. MCDONALD, ESQ.<br>WILSHIRE SCOTT & DYER, P.C.<br>1221 MCKINNEY, SUITE 3000<br>HOUSTON, TX 77010 | JOSEPH E. SHICKICH JR.<br>RIDDLE WILLIAMS P.S.<br>1001 - 4TH ST., SUITE 4500<br>SEATTLE, WA 98154-1065 |
| SCOTT W COWAN<br>JONES DAY<br>600 TRAVIS SUITE 6500<br>HOUSTON, TX 77002 | RAY C. SCHROCK/ROBERT GRIFFITH<br>JONES DAY<br>77 WEST WACKER<br>CHICAGO, IL 60601-1692 | |
| CHAMBERLAIN<br>ATTN: MARK TONE<br>P O BOX 99152<br>CHICAGO, IL 60693 | JOHN P. DILLMAN<br>LINEBARGER GOGGAN BLAIR<br>P O BOX 3064<br>HOUSTON, TX 77253-3064 | RONALD HORNBERGER<br>RENAISSANCE PLAZA SUITE 1100<br>70 NORTHEAST LOOP 410<br>SAN ANTONIO, TX 78216 |
| MARK M OVESON<br>BROWNSTEIN HYATT FARBER<br>410 - 17TH STREET 22ND FLOOR<br>DENVER, CO 80202 | MIKE PANKOW<br>BROWNSTEIN HYATT FARBER<br>410 - 17TH STREET 22ND FLOOR<br>DENVER, CO 80202 | MICHELLE SALISBURY<br>WELLS FARGO BUSINESS CREDIT<br>40 NORTHEAST LOOP 410, STE 340<br>SAN ANTONIO, TX 78216 |